## UNITED STATES DISTRICT COURT
## FOR THE EASTERN OF NEW YORK

| | |
|---|---|
| CAIVINAGUA SANCHEZ, VICTOR IGNACIO<br><br>                    Petitioner,<br><br>        v.<br><br>KEN GENALO, NY Field Director ICE / ERO DHS<br>PAM BONDI, Attorney General of the United States, KRISTI NOEM, Secretary of the Department of Homeland Security, TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement; Warden Metropolitan Detention Center MDC Brooklyn US BOP<br>Respondents. | Case No.<br><br>Hon.<br><br>A No. 254005359<br><br>**PETITION FOR WRIT OF HABEAS CORPUS**<br><br><br><br>ORAL ARGUMENT REQUESTED |

# PETITION OF WRIT OF HABEAS CORPUS

## INTRODUCTION

1. Petitioner Victor Ignacio Caivinagua Sanchez, who has been a New York City resident for 25 years, comes to this Court to challenge his illegal arrest on the streets of the Bronx, New York, on January 22, 2025, by Immigration and Customs Enforcement.

2. ICE arrested Mr. Caivinagua, a 43-year-old carpenter as he was coming home from work near his address at 2304 Sedgwick Avenue, Bronx, NY.

3. He had not committed any crime, so ICE, which had no warrant of arrest, had no right to detain, search, or arrest or question him.

4. Notably, the Department of Homeland Security has unconstitutionally determined that Mr. Caivanagua must be incarcerated, does not qualify to remain at liberty or for a bond hearing, and should be indefinitely held throughout any proceedings, which can take many months and sometimes years.

5. This petition arises from the U.S. government's new policy—which contradicts both the plain language of the Immigration and Nationality Act (INA) and decades of agency practice—of erroneously interpreting the INA to mandate detention without the possibility of bond for noncitizens who entered the United States without inspection, even if they have been residing here for years.

6. This policy has led to the unlawful detention of countless noncitizens nationwide. Dozens of habeas corpus petitions for their release have been filed in

jurisdictions across the country. Virtually every merits decision in those cases has found for the petitioners, either granting them a bond hearing or ordering their immediate release.

7.    . Upon information and belief, Petitioner was never stopped by immigration and has never had any contact with ICE.

8.    He was just transferred to MDC BROOKLYN US BOP, from Delaney Hall Detention Facility, located at 451 Doremus Avenue, Newark, New Jersey 07105, where he was last held.

9.    Petitioner's detention in Brooklyn has effectively isolated him from her family and legal counsel in New York, severely hindering his ability to communicate with counsel, access necessary documentation, and continue participation in her ongoing immigration proceedings. His abrupt detention and transfer were executed without any individualized assessment of risk, danger, or necessity, in violation of due process and long-standing DHS policy.

10.    Respondents' continued detention of Petitioner, who has no criminal history and presents no risk of flight, without an individualized custody determination, contravenes both the statutory framework governing civil immigration detention and the fundamental due-process protections guaranteed by the Fifth Amendment. Congress designed the asylum system to provide protection to individuals fleeing persecution, not to subject them to arbitrary and

prolonged detention absent a showing of danger or flight risk. Maintaining Petitioner in custody without such a showing undermines the humanitarian purpose of the asylum laws and constitutes unlawful civil detention.

11. As stated, Petitioner's detention and transfer were carried out without individualized justification or explanation. The abrupt arrest and relocation have separated him from his family, community, and counsel, and have severely disrupted his ability to meaningfully pursue a defense.

12. Petitioner's continued detention is part of an unlawful and arbitrary enforcement practice under which ICE detains individuals present in the United States regardless of their compliance history, the amount of time they have been residing in the United States or humanitarian circumstances. This practice has resulted in Petitioner's ongoing detention without any showing of flight risk or danger to the community, in violation of due process.

13. Petitioner poses no danger to the community. He has never been arrested in the United States, has no criminal history, and has not even received a parking citation.

14. Petitioner is represented by Musa-Obregon Law P.C., based in New York. His detention in Brooklyn now has substantially impaired his ability to communicate with counsel, gather evidence, and prepare for his ongoing immigration proceedings.

15.     Petitioner is currently in the physical custody of Respondents at MDC Brooklyn, US BOP Delaney Hall Detention Facility. 8- 29th Street, Brooklyn ,NY 11232. This facility operates under the supervision of the Newark Field Office of Immigration and Customs Enforcement (ICE), which has responsibility for immigration detention centers within its jurisdiction.

16.     Under 8 U.S.C. § 1226(a), which governs the arrest and detention of noncitizens pending removal proceedings, DHS has discretionary authority to release individuals on bond or conditional parole. Petitioner falls squarely within this statutory framework, as he has resided in the United States since 2019 and was initially released by DHS after being apprehended as a minor. The statute has long been applied to individuals, like Petitioner, who entered the United States without inspection but subsequently established residence and compliance with immigration requirements.

17.     Notwithstanding this statutory framework, pursuant to a new governmental policy announced on or about July 8, 2025, Petitioner is now being unlawfully detained without bond. Under this policy, ICE officers are directed not to apply § 1226(a) to individuals charged as inadmissible under § 1182(a)(6)(A)(i)—that is, persons who entered without inspection—but instead to treat them as subject to mandatory detention under § 1225(b)(2)(A). This represents a drastic departure from decades of established practice under which

§ 1225(b) applied only to recent border arrivals, not to long-term residents, minors, or individuals with pending immigration relief.

18.     Detaining Petitioner without a bond hearing is contrary to the plain text of the INA, longstanding regulations, and agency practice, all of which require an individualized custody determination under § 1226(a). This unlawful detention is particularly egregious given Petitioner's long history of compliance with her ICE check-ins

19.     Accordingly, Petitioner respectfully seeks a writ of habeas corpus directing Respondents to  release him immediately from custody, or, in the alternative, (b) provide her a prompt bond hearing under 8 U.S.C. § 1226(a) within seven (7) days, at which the government must bear the burden of demonstrating that his continued detention is necessary.

20.     Petitioner does not challenge the discretionary outcome of any bond proceeding; rather, he challenges the detention and determination that she is ineligible for a bond hearing altogether. The categorical denial of bond eligibility under § 1225(b) as applied to Petitioner is unlawful, arbitrary, and inconsistent with the INA, the Fifth Amendment's Due Process Clause, and decades of agency interpretation.

## JURISDICTION

21.    Petitioner CAIVINAGUA is in the physical custody of Respondents. Petitioner is detained at the MDC Brooklyn US BOP.

22.    This Court has jurisdiction under 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

23.    This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

24.    Venue is proper in the Eastern District of New York under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Petitioner is detained in an immigration detention facility at the direction of, and is in the immediate custody of, Respondent Warden MDC Brooklyn. *See Roman v. Ashcroft*, 340 F.3d 314, 320-21 (6th Cir. 2003).

25.    Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims and relevant facts occurred in the EDNY and SDNY .

26.

## REQUIREMENTS OF 28 U.S.C. § 2243

7

27.     The Court must grant the petition for a writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

28.     Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

29.     Petitioner CAIVINAGUA is a citizen of Ecuador. He has been in immigration detention since January 22, 2025, and is currently detained at MDC Brooklyn, US BOP. After taking custody of Petitioner, ICE did not set bond.

30.     Respondent is the Warden of MDC Brooklyn, where Petitioner is currently held. As such, Respondent Warden is the immediate custodian and is responsible for her detention. He is named in his official capacity.

31.    Respondent Kristi Noem is the Secretary of the Department of Homeland Security. She is responsible for the implementation and enforcement of the INA and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

32.    Respondent Kenneth Genalo is the ERO/ ICE director of the Field Office NYC of the Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

33.    Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates are component agencies. She is sued in her official capacity.

## FACTS

### *Petitioner Yelitza Albarran*

34.    Petitioner CAIVINAGUA has resided in the United States since at least 2000 and currently lives in Bronx, NY.

35.    Petitioner has established deep and meaningful ties to his community in New York, where he has lived continuously for years. He maintained the same address for years.

36. Petitioner is also an active and contributing member of his local community. He maintains supportive relationships with neighbors, friends, and others who regard him as responsible and compassionate. His conduct reflects a consistent commitment to lawful living, family unity, and community engagement.

37. Petitioner is clearly neither a flight risk nor a danger to the community, as demonstrated by the following:

38. Good moral character and lack of criminal history: Petitioner has no criminal record.

39. Community ties: Petitioner is an active member of his community, maintaining close relationships with neighbors and participating in school and local activities. His detention has adversely affected not only his family but also the community that values his presence.

40. Petitioner is represented by counsel and has strong claims for immigration relief, mainly his Asylum application. Without relief from this Court, Petitioner faces the prospect of prolonged detention at Delaney Hall, separated from his family and community.

41. **LEGAL FRAMEWORK**

42. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

43.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens who are in removal proceedings. *See* 8 U.S.C. § 1229a. *See also Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (explaining that § 1226(a) applies to those who are "already in the country" and are detained "pending the outcome of removal proceedings"). Under § 1226(a), individuals who are taken into immigration custody pending a decision on whether they are to be removed can be detained but are generally entitled to seek release on bond.[1] The bond may be set by ICE itself as part of an initial custody determination, *see* 8 C.F.R. § 1236.1(c)(8), and/or the individual may seek a bond hearing in immigration court at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d). Section 1226(a) is the statute that, for decades, has been applied to people like Petitioner who have been living in the United States and are charged with inadmissibility under § 1182(a)(6)(A)(i).

44.    Second, the INA provides for mandatory detention of certain recently arrived noncitizens, namely those subject to expedited removal under 8 U.S.C. § 1225(b)(1), and other recent arrivals seeking admission under § 1225(b)(2). *See Jennings*, 583 U.S. at 287, 289 (explaining that § 1225(b)(2)'s mandatory detention scheme applies "at the Nation's borders and ports of entry" to noncitizens "seeking

---

[1] Section § 1226 contains an exception for noncitizens who have been arrested, charged with, or convicted of certain crimes, who are subject to mandatory detention without bond. 8 U.S.C. § 1226(c). That exception does not apply to Petitioner here.

11

admission into the United States."). Section 1225(b)(2) is the statute that Respondents have suddenly decided is applicable to people like Petitioner.

45.    Third, the INA also provides for detention of noncitizens who have already been ordered removed, *see* 8 U.S.C. § 1231. Section 1231 is not relevant here.

46.    This case challenges Respondents' erroneous decision that Petitioner is subject to mandatory detention without bond under §1225(b)(2), rather than being bond-eligible under § 1226(a).

47.    The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 582–583, 585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

48.    Following the 1996 enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997) (explaining that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled

12

(formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.").

49.    Thus, in the three decades that followed, people who entered without inspection and were subsequently placed in removal proceedings received bond hearings if ICE chose to detain them, unless their criminal history rendered them ineligible. That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

50.    The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." And "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' "This principle protects citizens and noncitizens such Mr. Caivanagua alike. Furthermore, in habeas proceedings concerning "executive detention orders," courts must conduct "the most searching review" to ensure the legality of the detention, "which occur[s] without the procedural protections required in courts of law."

51.    However, on July 8, 2025, ICE, "in coordination with" the Department of Justice, suddenly announced a new governmental policy that rejected the well-established understanding of the statutory framework and reversed decades of agency practice.

52.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection are subject to mandatory detention without bond under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even for decades or since infancy.

53.    In decision after decision, federal courts—both nationwide and here in the EDNY—have rejected Respondents' sudden reinterpretation of the statutory scheme, and have instead held that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *See, e.g, Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025); Order, *Bautista v. Santacruz Jr.*, No. 25-CV-1873 (C.D. Cal. July 28, 2025), Dkt. 14; *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Order, *Gonzalez v. Noem*, No. 25-CV-2054 (C.D. Cal. Aug. 13, 2025), Dkt. 12; *Dos*

*Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ---, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 25-CV-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Order, *Aguilar Vazquez v. Bondi*, No. 25-CV-3162 (D. Minn. Aug. 19, 2025), Dkt. 17; *Romero v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 25-CV-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Order, *Ruben Benitez v. Noem*, No. 25-CV-2190 (C.D. Cal. Aug. 26, 2025), Dkt. 11; *Kostak v. Trump*, No. 25-CV-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-CV-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Francisco T. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Order, *Jimenez Garcia v. Kaiser*, No. 25-CV-06916 (N.D. Cal. Aug. 29, 2025), Dkt. 22; *Garcia v. Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921, 2025 WL 2533110 (N.D. Cal., Sept. 3, 2025); *Doe v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); Order, *Encarnacion v. Moniz*, No. 25-CV-12237 (D. Mass. Sept. 5, 2025), Dkt. 16; *Jimenez v. FCI Berlin,*

*Warden*, --- F. Supp. 3d ---, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Mosqueda v. Noem*, No. 25-CV-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Hinestroza v. Kaiser*, No. 25-CV-07559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025); *Sampiao v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Guzman v. Andrews*, No. 25-CV-01015, 2025 WL 2617256 (E.D. Cal. Sept. 9, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Lopez Santos v. Noem*, No. 25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Salcedo Aceros v. Kaiser*, No. 25-CV-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); Order, *Lamidi v. FCI Berlin, Warden*, No. 25-CV-297 (D.N.H. Sept. 15, 2025), Dkt. 14; *Garcia Cortes, v. Noem*, No. 25-CV-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Pablo Sequen v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025); *Maldonado Vazquez v. Feeley*, No. 25-CV-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos*, No. 25-CV-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, --- F. Supp. 3d ---, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Beltran Barrera v. Tindall*, No. 25-CV-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Singh v. Lewis*, No. 25-CV-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Giron Reyes v. Lyons*, --- F. Supp. 3d ---, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Brito*

*Barrajas v. Noem*, No. 25-CV-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025);

*Lepe v. Andrews*, --- F. Supp. 3d ---, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025);

*Lopez v. Hardin*, No. 25-CV-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); *Roa v. Albarran*, No. 25-CV-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); *Rivera Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Valencia Zapata v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Alves da Silva v. U.S. Immigr. & Customs Enf't*, No. 25-CV-284, 2025 WL 2778083 (D.N.H. Sept. 29, 2025); *Chang Barrios v. Shepley*, No. 25-CV-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); *Inlago Tocagon v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Romero-Nolasco v. McDonald*, --- F. Supp. 3d ---, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); *Quispe v. Crawford*, No. 25-CV-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Chiliquinga Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); Order, *Morales v. Plymouth Cnty. Corr. Facility*, No. 25-CV-12602 (D. Mass. Sept. 30, 2025), Dkt. 15; *Quispe-Ardiles v. Noem*, No. 25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Ayala Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Chanaguano Caiza v. Scott*, No. 25-CV-

17

00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); *Guzman Alfaro v. Wamsley*, No. 25-CV-01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); *Rocha v. Hyde*, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); *Alvarenga Matute v. Wofford*, No. 25-CV-01206, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025); *Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Echevarria v. Bondi*, No. 25-CV-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).[2]

54.     This list is undoubtedly incomplete. As the media has reported, the government's new no-bond policy has "led to dozens of recent rulings from gobsmacked judges who say the administration has violated the law and due process rights …. The pile up of decisions is growing daily." Kyle Cheney and Myah Ward, *Trump's New Detention Policy Targets Millions Of Immigrants. Judges Keep Saying*

---

[2] *But see Chavez v. Noem*, No. 25-CV-02325, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025) (denying request for *ex parte* temporary restraining order on grounds that the petitioners' motion did not raise "serious questions going to the merits."); *Vargas Lopez v. Trump*, No. 25-CV-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025) (denying habeas petition primarily due to "the mistakes in the Petition, including the failure of Vargas Lopez to attach certain referenced exhibits.").

*It's Illegal*, Politico (Sept. 20, 2025, at 4:00 PM ET), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850.

55.    In recent months, the federal courts, including this district, have repeatedly rejected the Respondents' interpretation of the INA and granted writs of habeas corpus to detained noncitizens to whom the Respondents denied a bond hearing. Courts have consistently recognized that § 1226(a), rather than § 1225(b)(2)(A), governs the detention of noncitizens who were already present in the United States when taken into immigration custody. For instance in *Rivera Zumba v Bondi* No. 2:25-cv-14626-KSH (D.N.J. Sept. 26, 2025), the court explained that individuals apprehended long after entry into the United States, even if initially entered without inspection, are detained pursuant to § 1226(a), which provides for discretionary release and bond hearings. The court emphasized the distinction between § 1225, which applies only to noncitizens seeking admission at or near a port of entry, and § 1226(a), which governs detention of noncitizens already present in the interior of the United States. The decision clarified that mandatory detention under § 1225(b)(2)(A) does not extend to long-term residents apprehended in the interior who are not "seeking admission" and were never inspected at a border. Rivera Zumba therefore confirms that Petitioner, who has resided in the United States for many years and was apprehended well after entry, is entitled to a bond hearing and cannot be subject to mandatory detention under § 1225. More

19

recent decisions holding the same include: Contreras-Cervantes v. Raycraft, No. 25-cv-13073, 2025 WL 2952796 (E.D. Mich. Oct. 17, 2025); Diaz-Sandoval v. Raycraft, No. 25-cv-12987 (E.D. Mich. Oct. 17, 2025); Pacheco Mayen v. Raycraft, 25-cv-13056 (E.D. Mich. Oct. 17, 2025); Contreras-Lomeli v. Raycraft, No. 25-cv-129826 (E.D. Mich. Oct. 21, 2025); Casio-Mejia v. Raycraft, 25-cv-13032 (E.D. Mich. Oct. 21, 2025); Santos Franco v. Raycraft, 25-cv-13199 (E.D. Mich. Oct. 21, 2015).

56.    On September 5, 2025, the BIA issued a precedential decision that rejected the overwhelming consensus of the federal courts. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). That decision held that all noncitizens who entered the United States without admission or parole are ineligible for bond hearings before an IJ.

57.    The Yajure Hurtado decision—like the government policy it seeks to uphold—defies the INA.—the BIA's reasoning is unpersuasive and "at odds with every District Court that has been confronted with the same question of statutory interpretation

58.    As court after court has explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner.

20

59. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

60. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a).

61. When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez, 779 F. Supp. 3d at 1256-57 (citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400 (2010)).

62. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

63. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). See Jennings, 583 U.S. at 287 (explaining that this mandatory detention scheme applies "at the Nation's borders and ports of entry,

where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible.").

64.    Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people who have already entered and were long residing in the United States at the time they were apprehended by immigration authorities and detained. Because § 1226(a), not § 1225(b), is the applicable statute, Petitioner's detention without eligibility for bond is unlawful.

65.    Petitioner seeks relief from this Court because any months-long appeal to the BIA of an IJ's decision denying bond would be futile. A request for a bond hearing is likewise futile. First, the agency's position is clear: both IJs and future panels of the BIA must follow the Yajure Hurtado decision. Further, the new governmental policy was issued "in coordination with DOJ," which oversee the immigration courts, including the BIA—up to and including the ability of the Attorney General to modify or overrule decisions of the BIA, see 8 C.F.R. §1003.1(h). It is therefore unsurprising that the BIA has (erroneously) held that persons like Petitioner are subject to mandatory detention under § 1225(b)(2)(A), rather than being bond-eligible under § 1226(a). Moreover, in the numerous identical habeas corpus petitions that have been filed nationwide, EOIR and the Attorney General are often respondents and have consistently affirmed via briefing and oral

argument that individuals like Petitioner are applicants for admission and subject to detention under § 1225(b)(2)(A).

66.    Second, by the time the BIA could even issue an appeal—a process that typically takes at least six months, Rodriguez, 779 F. Supp. 3d at 1245, and in many cases roughly a year, id.—the harm of Petitioner's unlawful detention will be impossible to remediate. Nor will the downstream effects of continued detention be remediable: separation from family, interruption of care, and loss of community stability—cannot be fully remedied once they occur.

67.    Third, neither IJs nor the BIA have the authority to decide constitutional claims. See Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir. 2006). Here, Petitioner claims not only that Respondents are unlawfully detaining him without bond hearings under an inapplicable statute, but also that such detention violates Petitioner's constitutional right to due process if the government seeks to deprive him of her liberty.

68.    Lastly, this Petitioner must point out that if Respondents were going to lawfully detain the Petitioner, they were required to do so pursuant to Section 236 and its attendant regulations. Of course, this re-detention under Section 236 would have required Respondents to afford the Petitioner the procedural protections set forth in the applicable regulations.

23

69.     The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." And "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" This protection extends to citizens and noncitizens alike, including the Petitioner. Moreover, in habeas proceedings challenging "executive detention orders," courts must engage in "the most searching review" to ensure the legality of detention imposed without the procedural safeguards required in courts of law.

70.     Respondents have offered no justification for the Petitioner's detention other than his manner of entry into the United States. They have failed to articulate any government interest sufficiently compelling to outweigh the Petitioner's substantial liberty interest or to justify the unacceptable risk of erroneous deprivation inherent in detention imposed without any process at all.

71.     The current administration's unilateral decision to subject noncitizens like the Petitioner to mandatory detention without individualized process violates the Constitution.

## CLAIMS FOR RELIEF

24

## COUNT I

### Violation of the INA

72.    Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

73.    Respondents are unlawfully detaining Petitioner without bond pursuant to the mandatory detention provision at 8 U.S.C. § 1225(b)(2).

74.    Section 1225(b)(2) does not apply to Petitioner, who previously entered the country and has long been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents.

75.    Instead, Petitioner should be subject to the detention provisions of § 1226(a) and is therefore entitled to a custody determination by ICE, and if custody is continued, to a custody redetermination (i.e., a bond hearing) by an immigration judge.

76.    Respondents' application of 8 U.S.C. § 1225(b)(2) to Petitioner results in Petitioner's unlawful detention without the opportunity for a bond hearing and violates the INA.

## COUNT II

### Violation of Due Process

77.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

78.     The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

79.     Petitioner has a fundamental interest in liberty and being free from official restraint.

80.     The government's detention of Petitioner without an opportunity for a custody determination or bond hearing to decide whether he is a flight risk or danger violates Petitioner's right to due process.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.     Assume jurisdiction over this matter;

26

b.  Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody, as his detention under the incorrect statutory framework constitutes a violation of his due process rights.

c.  Rule that, pending a final determination in her removal proceedings, Mrs. Albarran shall remain free of detention or any other restraint under the immigration laws of the United States.

d.  Enjoin Respondents from transferring Petitioner from the jurisdiction of this District pending these proceedings.

e.  Declare that 8 U.S.C. § 1226(a)—and not 8 U.S.C. § 1225(b)(2)(A) —is the appropriate statutory provision that governs Petitioner's detention and eligibility for bond because Petitioner is not a recent arrival "seeking admission" to the United States, and instead was already residing in the United States when apprehended and charged as inadmissible for having allegedly entered the United States without inspection.

f.  In the alternative, should the Court decline to issue a writ of habeas corpus, order that an Immigration Judge provide Petitioner with an individualized bond hearing within seven (7) days pursuant to 8 U.S.C. § 1226(a), at which the Department of Homeland Security bears the burden of proving that Petitioner's continued detention is warranted.

27

g.      Award Petitioner fees and costs under the Equal Access to Justice Act ("EAJA"),

as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

h.      Grant any other and further relief that this Court deems just and proper.

Dated: January 27, 2026,


/s/ S. Michael Musa-Obregon
S. Michael Musa-Obregon, Esq.
Counsel for Petitioner
Musa-Obregon Law, PC
55-21 69th Street
Maspeth, New York 11378
(718)803-1000
Michael@Musa-obregon.com

28